## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.,

Plaintiff,

v.

U.S. DEPARTMENT OF EDUCATION,

Defendant.

Case No. 18-cv-4433

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552 *et seq*

### INTRODUCTION

1.      The NAACP Legal Defense and Educational Fund, Inc. ("LDF" or "Plaintiff") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq*., as amended, to obtain injunctive and other appropriate relief, requiring the U.S. Department of Education ("DOE" or "Defendant") to respond to a FOIA request that LDF sent on July 12, 2017 ("Request"), and to promptly disclose the requested records.

2.      The Request seeks records concerning DOE's Office for Civil Rights ("OCR") and its guidance documents and memoranda regarding, among other things, complaints, case processing, enforcement, and internal policies. Declaration of Ajmel Quereshi (hereinafter "Quereshi Decl."), Ex. B.

3.      Specifically, the Request seeks records concerning, among other things, (1) documents identifying the categories of matters, investigations, or topics that must be reviewed

and/or approved by the DOE's Office for Civil Rights, including current guidance and internal enforcement memoranda; guidance and internal enforcement memoranda that have been revoked since December 20, 2016; and any guidance or internal enforcement memoranda that have been issued in place of guidance or internal enforcement memoranda revoked since December 20, 2016; and (2) documents relating to DOE's approach to, or investigation or resolution of, complaints alleging violations of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Individuals with Disabilities Education Act, Title IX of the Education Amendments of 1972, and Section 504 of the Rehabilitation Act of 1973, and their implementing regulations.

4.      For over six months, LDF communicated with DOE officials about the FOIA Request, complying with all of DOE's instructions intended to facilitate the production of the requested records. Then, after months of delays, DOE ceased communicating, failing to provide LDF with any updates or information since January 23 of this year. As of the filing of this Complaint—over nine months after LDF sent its FOIA Request—DOE has not notified LDF as to whether it will comply.

## BACKGROUND

5.      Under the current presidential administration, DOE's Office for Civil Rights has undermined the civil rights protections afforded to students by federal law and made it more onerous for students to obtain relief for civil rights violations. Examples include:

a)  On February 22, 2017, DOE rescinded guidance that protected the safety and rights of transgender students.[1]

---

[1] Michael A. Memoli & Joy Resmovits, *Trump Administration Rescinds Guidelines on Protections for Transgender Students*, L.A. TIMES (Feb. 22, 2017), http://www.latimes.com/politics/la-na-pol-trump-transgender-students-20170222-story.html.

b)  On February 12, 2018, DOE announced that it would not protect or even consider complaints from students who are denied access to bathrooms that correspond with their gender identity.[2] Reversing its prior position, DOE now asserts that Title IX does not prohibit discrimination based on gender identity.[3]

c)  On September 22, 2017, DOE rescinded federal guidance regarding how colleges and universities should respond to allegations of sexual assault, allowing schools to impose a more onerous burden on students bringing sexual assault claims under Title IX.[4] On January 25, 2018, civil rights and victims' rights groups sued DOE challenging the legality of this action.[5]

6.    Reports indicate that DOE is also seeking to eliminate or weaken policies and guidance intended to address and remedy racial discrimination and academic disparities in public education.[6] This would be consistent with May 2017 testimony by DOE Secretary Betsy DeVos, in which she defended "school choice" programs before a congressional subcommittee but refused to say whether her office would provide funds to private schools that intentionally discriminated against students.[7]

---

[2] Cory Turner & Anya Kamenetz, *The Education Department Says It Won't Act on Transgender Student Bathroom Access*, NPR (Feb. 12, 2018), https://www.npr.org/sections/ed/2018/02/12/585181704/the-education-department-says-it-wont-act-on-transgender-student-bathroom-access.

[3] *See id.*

[4] *See* Nick Anderson, *Trump Administration Rescinds Obama-era Guidance on Campus Sexual Assault*, WASH. POST (Sept. 22, 2017), https://www.washingtonpost.com/local/education/trump-administration-rescinds-obama-era-guidance-on-campus-sexual-assault/2017/09/22/43c5c8fa-9faa-11e7-8ea1-ed975285475e_story.html?utm_term=.363bc09a7b99.

[5] *SurvJustice, Inc. v. DeVos*, No. 18-cv-00535, 2018 WL 555633 (N.D. Cal. Jan. 25, 2018).

[6] *See, e.g.*, Erica L. Green, *DeVos Delays Rule on Racial Disparities in Special Education*, N.Y. TIMES (Dec. 15, 2017), https://www.nytimes.com/2017/12/15/us/politics/devos-obama-special-education-racial-disparities.html; Josh Delk, *DeVos Commission to Mull Obama "Rethink School Discipline" Policies*, THE HILL (Mar. 13, 2018), http://thehill.com/blogs/blog-briefing-room/378082-devos-commission-to-mull-obama-rethink-school-discipline-policies.

[7] Erica L. Green, *Betsy DeVos Refuses to Rule Out Giving Funds to Schools that Discriminate*, N.Y. TIMES (May 24, 2017), https://www.nytimes.com/2017/05/24/us/politics/betsy-devos-refuses-to-rule-out-giving-funds-to-schools-that-discriminate.html.

7.      In June 2017, Candice Jackson, the acting head of the Office for Civil Rights, issued a memorandum weakening OCR's requirements with respect to the investigation of civil rights violations, including racial discrimination claims. Specifically, the memorandum ordered that OCR scale back its requirements that investigators identify systemic issues and classes of victims when assessing discrimination complaints.[8] Additionally, the memorandum provided that OCR would no longer require civil rights investigators to obtain complaint data for the previous three years from schools and districts when assessing their compliance with civil rights law.[9] Instead, investigators could base their decision on a more limited set of data.

8.      These changes have been combined with efforts to weaken OCR's investigative capacity. In a budget proposal, the Trump administration proposed cutting the staff of DOE's Office for Civil Rights by 40 percent and acknowledged that the "proposed funding levels would hamper the work of that department's civil rights office."[10]

9.      These changes are occurring at a time when racial discrimination in schools is on the rise. According to DOE data produced in February 2018, "the civil rights division [of DOE] saw a significant increase in the number of complaints it received regarding racial harassment in schools, including post-secondary institutions, in 2017."[11]

10.     Disclosure of the records that LDF seeks through this action would facilitate the

---

[8] *See* Jessica Huseman & Annie Waldman, *Trump Administration Quietly Rolls Back Civil Rights Efforts Across Federal Government*, PROPUBLICA (June 15, 2017), https://www.propublica.org/article/trump-administration-rolls-back-civil-rights-efforts-federal-government.
[9] *See id.*
[10] Juliet Eilperin, et al., *Trump Administration Plans to Minimize Civil Rights Efforts in Agencies*, WASH. POST (May 29, 2017), https://www.washingtonpost.com/politics/trump-administration-plans-to-minimize-civil-rights-efforts-in-agencies/2017/05/29/922fc1b2-39a7-11e7-a058-ddbb23c75d82_story.html?utm_term=.1ef176d969bd; *see* Coleton Whitaker, *The Trump Administration's Slow But Steady Undoing of the Department of Education*, CTR. FOR AM. PROGRESS (Nov. 20, 2017), https://www.americanprogress.org/issues/education-k-12/news/2017/11/20/442737/trump-administrations-slow-steady-undoing-department-education/.
[11] Rebecca Klein, *Schools See Major Uptick in Racial Harassment, New Data Suggests*, HUFF. POST (Feb. 23, 2018), https://www.huffingtonpost.com/entry/racial-harassment-in-schools-uptick_us_5a8db498e4b03414379cae76.

public's understanding of how DOE has restricted the operations of the Office for Civil Rights. Moreover, disclosure of the records is necessary for LDF's monitoring of government agency responses to allegations of racial discrimination in the field of education, which LDF has monitored and actively litigated for over seven decades.

11.    This Request has become increasingly salient with the recent formation of Secretary DeVos's School Safety Commission, which convened for the first time on March 28, 2018. That Commission is evaluating whether to repeal guidance that DOE issued in 2014 to improve racial disparities in school discipline[12]—guidance that President Trump has recently blamed for the school shooting at Stoneman Douglas High School in Parkland, Florida.[13] The Commission is not open to the public.

12.    Complying with this Request would serve the public interest in revealing what memoranda or other documents are before the DOE. The closed-door School Safety Commission is engaged in meetings that may result in the rescission of policies related to combatting racial discrimination and disparities in school discipline.

13.    This action is necessary because DOE has failed to provide LDF with a determination as to whether it will comply with the Request, although more than nine months have elapsed since DOE received the Request. LDF has repeatedly attempted to work with the Department to facilitate a response to LDF's request, but to no avail.

## JURISDICTION

14.    This Court has subject-matter jurisdiction over this action and personal jurisdiction

---

[12] Juana Summer, *Trump's School Safety Commission to Hold First Meeting Behind Closed Doors*, CNN (Mar. 28, 2018), https://www.cnn.com/2018/03/28/politics/trump-school-safety-commission-betsy-devos/index.html.

[13] Erica L. Green, *Trump Finds Unlikely Culprit in School Shootings: Obama Discipline Policies*, N.Y. TIMES (Mar. 13, 2018), https://www.nytimes.com/2018/03/13/us/politics/trump-school-shootings-obama-discipline-policies.html.

over the parties under 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 701–706, and 28 U.S.C. § 1331.

## VENUE

15.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). Plaintiff LDF has its principal place of business in this district.

## PARTIES

16.     Plaintiff NAACP Legal Defense and Educational Fund is a non-profit 501(c)(3) corporation established under the laws of the State of New York. LDF is the nation's oldest civil and human rights law organization, founded in 1940 by former Supreme Court Justice Thurgood Marshall. Since its inception, LDF has used legal, legislative, public education, and advocacy strategies to promote full, equal, and active participation of African Americans in America's democracy. In furtherance of its mission, LDF has worked for over seven decades to dismantle racial segregation and ensure equal educational opportunities for all. LDF's efforts to ensure equal educational opportunities for African American students have included a number of seminal Supreme Court decisions, including *Brown v. Board of Education*, 347 U.S. 483 (1954).

17.     Defendant Department of Education is the federal agency responsible for oversight of education. Among its responsibilities is the enforcement of civil rights laws as they pertain to educational settings. DOE is an agency within the meaning of 5 U.S.C. § 552(f).

## THE FREEDOM OF INFORMATION ACT

Under the Freedom of the Information Act, all federal agency records are accessible to the public, unless the government shows that they are specifically exempt. 5 U.S.C. § 552, *et seq*. The Supreme Court has explained that "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the

governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see also Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) ("Disclosure, not secrecy, is the dominant objective of the Act."). Thus, the Supreme Court has recognized a presumption in favor of disclosure, with the burden falling on the government agency to justify any nondisclosure. *See, e.g.*, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) ("If an agency improperly withholds any documents, the district court has jurisdiction to order their production. Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden on the agency to sustain its action.") (internal quotation marks omitted).

The Freedom of Information Act imposes certain time limits on government agencies to ensure that FOIA requests are not neglected. An agency is required to make a determination as to whether it will comply with a FOIA request within 20 working days of receiving the request. 5 U.S.C. § 552(a)(6)(A)(i). Likewise, an agency is required to a make a determination on an appeal within 20 working days of receiving the appeal. *Id.* § 552(a)(6)(A)(ii). Agencies are prohibited from tolling the 20-day response period for FOIA requests except through (1) a single query to the requester regarding the substance of the request; or (2) communications with the requester regarding fee assessment. *Id.* § 552(a)(6)(A). While an agency may extend the 20-day period due to "unusual circumstances," this extension is limited to an additional ten working days. *Id.* § 552(a)(6)(B).

### LDF'S REQUESTS AND DOE'S RESPONSES

18.     On July 12, 2017, LDF sent the Request to the DOE Office of Management's FOIA Public Liaison via email and regular postal mail.

19.     On July 18, 2017, a member of the DOE Office for Civil Rights Customer Service

and Technology Team, Sally Dunaway, sent an email to LDF attorney Ajmel Quereshi confirming receipt of the Request and stating, "I am the person within OCR's Customer Service group assigned to contact the groups within OCR who may have records responsive to your FOIA request. I will do my best to get them to you as soon as possible." Quereshi Decl. Ex. C. The Request was assigned the case number 17-02176-F.

20.    On July 20, 2017, Ms. Dunaway emailed Mr. Quereshi, requesting to speak about the Request and stating, "We need to come up with search terms and parameters for each question (except for number 6 [regarding organization charts]) so that I can tell people who are looking through their emails, etc., what to look for. . . . The sooner we talk the better in terms of getting on with the search." Quereshi Decl. Ex. D. Ms. Dunaway and Mr. Quereshi confirmed in a subsequent email exchange that they would speak by phone the following day at 12:30 P.M. As recounted in an email sent from Mr. Quereshi to Ms. Dunaway on July 31, 2017, the subject of this conversation was the proper records custodians for requests 2 and 5. Quereshi Decl. Ex. E.

21.    On July 26, 2017, Ms. Dunaway sent an email to Mr. Quereshi with two attachments consisting of organizational charts, which were responsive to item 6 in the Request. In the email, Ms. Dunaway wrote, "I am sending you these charts as the first interim release of records responsive to your FOIA request. These charts respond to your Number 6. Either today or no later than tomorrow, I will send you what I understand to be what you are looking for the other numbers of your request so you can reply." Quereshi Decl. Ex. F.

22.    Ms. Dunaway followed up on July 31, 2017, apologizing for not having sent any records since the email containing the organization charts. She wrote, "I promise, however, that by the end of today, I will send you what I understood you to say you are seeking in your request." Quereshi Decl. Ex. G.

23.     That same day, Mr. Quereshi replied with an email containing the names of specific DOE officers in specific DOE offices from whom records should be sought in order to facilitate DOE's response to the Request. Quereshi Decl. Ex. E.

24.     Ms. Dunaway replied later that day, saying, "I made you a promise I could not keep" and informing Mr. Quereshi that she would not be able to send the records that day due to technical problems with her redaction program. Quereshi Decl. Ex. H. She stated that she intended to send the records the following day.

25.     On August 3, 2017, Ms. Dunaway sent an email to Mr. Quereshi stating that she was "still backed up on other FOIA," but would "hopefully be able to finish defining your [FOIA request] tomorrow." Quereshi Decl. Ex. I.

26.     On August 4, 2017, Mr. Quereshi sent an email to Ms. Dunaway containing search terms. Quereshi Decl. Ex. J.

27.     Later that day, Ms. Dunaway sent an email to Mr. Quereshi, following up on a phone call about the Request and thanking Mr. Quereshi for sending the list of search terms. Ms. Dunaway wrote, "As I mentioned in today's conversation, you and I will t[r]ack down the questions, then I will send . . . out the request, as we have finalized it, to the folks in OCR and, at the same time, I will send the finalized request to the FOIA Service Center (FSC)." Quereshi Decl. Ex. K.

28.     On August 9, 2017, Ms. Dunaway sent an email with an update on the status of the Request and identifying some issues that had arisen regarding the list of search terms and DOE officers who may have the records being sought. The email stated:

> Unexpectedly, when I began to try to simplify and shorten your request, I realized that if I left words out or tried to re-frame them that I might accidentally mischaracterize what you are seeking or omit descriptions that you had included. It then occurred to me, **that in spite of the probable difficulty I believe some of the**

> **POCs will have in trying to interpret your request**, I cannot faithfully re-phrase/shorten/clarify your request as written. . . .
>
> . . .
>
> At this point, unless you can clarify your request yourself, I will send your request as written with the two addenda i.e., (1) the list of persons to whom you want the request sent **minus** the twelve regional directors, and, (2) the list of search terms.   I will then send your request plus the two addenda to the FSC which will send the three documents to all the persons/and or titles of positions to those who may have records responsive to your request **who are not within OCR**. As I am the point person for your FOIA for OCR only, I will send the three documents to the appropriate folks **within OCR only**.  I will tell the FSC to tell the other POCs and I will tell the OCR folks that you wish to receive the responsive records on a rolling basis.  Only after all the POCs, including OCR, have responded to your request, will you receive a final closure letter from FSC providing you with appeal rights.

Quereshi Decl. Ex. L.

29.     Mr. Quereshi responded that day, stating that he would forward the written requests in the form requested by close of business on Thursday, August 10, 2017, to which Ms. Dunaway replied, also that day, stating that would be fine. Quereshi Decl. Ex. M.

30.     On August 10, 2017, Mr. Quereshi sent an email to Ms. Dunaway attaching a list of records custodians within DOE and a list of revised search terms that was "significantly narrowed," per DOE's request. Quereshi Decl. Ex. N.

31.     After not hearing back from anyone in DOE, Mr. Quereshi left a voicemail following up on the status of the Request in mid-September. On September 20, 2017, Robert Wehausen, Team Lead of the DOE's FOIA Service Center, emailed Mr. Quereshi in response to the voicemail. According to Mr. Wehausen:

> If we were to conduct a search using the [search terms Mr. Quereshi had provided], along with the long list of custodians that were provided, the search would produce a MASSIVE amount of information that would include a lot of records that you probably have no interest in. We don't want to exert a lot of resources and effort into searching for records that you aren't interested in, just as I'm sure you don't want to delve through tons of information unrelated to your needs.

Quereshi Decl. Ex. O. Mr. Wehausen requested a follow-up phone call.

32.    A conference call was held on September 27, 2017, among Mr. Wehausen, Mr. Quereshi, and three other DOE employees—Robert M. Carey, Kristine Minami, and Kevin Slupe. On October 10, 2017, Mr. Wehausen sent an email to Mr. Quereshi summarizing the conversation, including listing the records custodians and language for the requests that was agreed upon. Mr. Quereshi responded the same day confirming that the summary was correct. The summary narrowed down the list to the following custodians:

- the Acting Assistant Secretary (AAS)
- the Deputy Assistant Secretary for Enforcement (DAS-E)
- the Deputy Assistant Secretary for Management and Operations (DAS-MO)
- the Acting Deputy Assistant Secretary for Policy (DAS-P)
- the Senior Counsel (Special Assistant) to the Assistant Secretary
- the Enforcement Directors (EDs)

The summary further specified that the Request referred to documents created on or after January 20, 2017, through the date of the search, and stated the following about what records were being sought:

Any records identifying cases or types of cases that require approval by Headquarters staff in Washington, DC (*i.e.*, which categories of enforcement matters cannot be reviewed or approved solely in the regional offices) and any documents (*i.e.*, internal guidance) relating to those records.

Any records related to the *OCR Instructions to the Field re Scope of Complaints* memorandum, including records referenced within the memorandum and records discussing its implementation.

Any records issued by these individuals broadly affecting the investigation, processing, or resolution of OCR cases nationwide (*i.e.*, documents relating to the prioritization of certain types of cases, relating to advancing "systemic" claims, etc.).

Any records relating to proposed or final changes to OCR's *Case Processing Manual*.

[This item is withdrawn].

[This item is withdrawn as moot, as it is addressed in other items in this request].

> Any records relating to instructions or directions to OCR staff on communications with external stakeholders (*i.e.*, when staff can speak, what can be said, prior approvals needed, etc.).

Quereshi Decl. Ex. P. (brackets in the original).

33.     On November 14, 2017, Mr. Quereshi sent an email to Mr. Wehausen asking for an update on the Request and inquiring when he should expect the production of the requested records. Mr. Wehausen replied the same day, stating that he would reach out to his colleagues in the Office for Civil Rights for an update and "get back to you right away." Quereshi Decl. Ex. Q.

34.     On November 21, 2017, Mr. Wehausen sent an email to Mr. Quereshi stating, "To date, I've yet to receive any additional information from OCR regarding your pending FOIA, so I plan on reaching back out to them today." Quereshi Decl. Ex. R.

35.     Having not heard back for over two weeks, Mr. Quereshi emailed Mr. Wehausen on December 12, 2017, asking to "[p]lease provide an update on the status of the Department's response to the request." Quereshi Decl. Ex. S.

36.     The next day, on December 13, 2017, Mr. Wehausen replied in an email stating, "Over the last few weeks, OCR has had a reduction in their staffing level which put their FOIA program in a state of transition, so they haven't been able to provide me with a substantive update. I'll reach out to them now in an effort to obtain an update." Quereshi Decl. Ex. T.

37.     On January 8, 2018, Mr. Quereshi sent an email to Mr. Wehausen stating, "It has now been close to 3 months since we agreed to search terms for LDF's remaining requests. Please provide an update on the status of the Department of Education's response to LDF's request as well as a concrete date within the next 14 days by which the Department of Education will provide the outstanding materials. If the Department of Education is unable to provide such, we will have no option, but to seek appropriate remedies in federal court." Quereshi Decl. Ex. U.

38.     On January 16, 2018, Mr. Quereshi received a letter from DOE's Office of the Chief Privacy Officer, granting LDF's request for a waiver of all fees connected to the Request. Quereshi Decl. Ex. V.

39.     On January 18, 2018, Mr. Wehausen sent an email to Mr. Quereshi stating, "Based on the scope of the request that was agreed to on October 10, 2017, the searches returned over 10,000 unique emails (over 12,000 unique items)—in this context, unique simply means some of the results satisfied more than one of the searches. We feel there could potentially be an opportunity to further narrow the scope for items 3 and 5." He requested another conference call with himself as well as OCR staff. Mr. Quereshi replied that same day, asking if January 22 or 23 would be convenient for the conference call. Quereshi Decl. Ex. W.

40.      On January 23, 2018, Mr. Wehausen replied to Mr. Quereshi's email, stating, "My apologies for not getting back to you last week on this matter. I reached out to my colleagues in OCR, but have yet to receive a response. Most staff were preoccupied last week preparing for the potential shutdown, *which ultimately did happen*, so I'll pin[g] them again today." Quereshi Decl. Ex. X.

41.     LDF has not received an update or any communication from Mr. Wehausen or any other DOE representative since January 23, 2018.

42.     As of the filing date of this Complaint, DOE has not notified LDF of a determination as to whether it will comply with the Request.

43.     Because DOE failed to comply with the 20-business-day time limit provision of FOIA, 5 U.S.C. § 552(a)(6)(A)(i), LDF is deemed to have exhausted its administrative remedies with respect to the Request under 5 U.S.C. § 552(a)(6)(C)(i) ("Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have

exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph."). Although FOIA typically requires completion of an agency's appeals process before one can seek judicial relief, "failure to seek administrative review of an agency's FOIA decision may be 'excused' where the agency 'fails to comply with the applicable time limit provisions of FOIA.'" *NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 07-cv-3378(GEL), 2007 WL 4233008, at *4 (S.D.N.Y. Nov. 30, 2007) (quoting *Ruotolo v. Dep't of Justice, Tax Div.*, 53 F.3d 4, 8 (2d. Cir. 1995) (internal quotation marks omitted)). In *NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, this Court found that LDF "constructively exhausted its administrative remedies when [the administrative agency] failed to respond to its [FOIA] request" within the designated time period. *Id.* at *4. Here, LDF has likewise constructively exhausted its administrative remedies and an administrative appeal is not necessary because DOE has failed to respond to the Request within the time limit set by 5 U.S.C. § 552(a)(6)(A)(i).

## CLAIMS FOR RELIEF

### Count I: Violation of FOIA for Failure to Provide a Determination
### Within 20 Business Days

44.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 43 above, inclusive.

45.     Within 20 days (excepting Saturdays, Sundays, and legal public holidays) after receiving the Request under FOIA, Defendant has a legal duty to determine whether it must comply with the Request and a legal duty to notify the requester immediately of the agency's determination and the reasons for that determination.

46.     Defendant's failure to determine whether to comply with the Request within 20 business days after receiving it violates FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and applicable

regulations promulgated thereunder.

### Count II: Violation of FOIA for Failure to Make Records Available

47.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 46 above, inclusive.

48.     Plaintiff has a legal right under FOIA to obtain the specific agency records requested on July 12, 2017, and Defendant has identified no legal basis to refuse to make the requested records promptly available to Plaintiff and the public.

49.     Defendant's failure to promptly make available the records sought by the Request violates FOIA, 5 U.S.C. § 552(a)(3)(A), and applicable regulations promulgated thereunder.

50.     On information and belief, Defendant currently has possession, custody, or control of the requested records.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court award them the following relief:

1.      Declare that Defendant violated FOIA by failing to determine whether to comply with the Request within 20 business days and by failing to notify Plaintiff immediately thereafter of such determination and the reasons for that determination; and

2.      Declare that Defendant violated FOIA by unlawfully withholding the requested records; and

3.      Order Defendant to immediately disclose the requested records and make copies immediately available to Plaintiff without charge for any search or duplication fees.

4.      Award Plaintiff its reasonable costs and attorneys' fees; and

5.    Grant such other relief as the Court may deem just and proper.

Respectfully submitted this 18th day of May 2018.

*/s/ Jin Hee Lee*
Sherrilyn A. Ifill
Bar No. SI8699
    *President and Director-Counsel*
Jin Hee Lee
Bar No. JL4912
    *Counsel of Record*
Samuel Spital
Bar No. SS4839
Aaron Sussman**
(N.Y. Bar No. 5247150)
NAACP Legal Defense and
    Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
Tel: (212) 965-2200
Fax: (212) 226-7592
jlee@naacpldf.org

Ajmel Quereshi*
(D.C. Bar No. 1012205)
NAACP Legal Defense and
    Educational Fund, Inc.
1444 I Street, NW 10th Floor
New York, NY 20005
Tel: (202) 682-1300
Fax: (202) 682-1312

*Pro Hac Vice forthcoming*
**Bar Admission forthcoming*